**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fay Ann Demarzio, | No. CV-20-02503-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Fay Ann Demarzio's application for disability insurance benefits by the Social Security Administration. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. The Court now addresses Plaintiff's Opening Brief (Doc. 11, Pl. Br.), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 12, Def. Br.), and Plaintiff's Reply Brief (Doc. 15, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 10), and now affirms the Administrative Law Judge's ("ALJ") decision.

## I.  BACKGROUND

Plaintiff filed an application for Title II benefits on July 9, 2015, alleging disability beginning June 30, 2014. (Doc. 10, Administrative Record page ("AR") at 144, 13.) Plaintiff's claim was denied initially on November 19, 2015, and subsequently upon reconsideration on June 27, 2016. (AR at 144.) On February 14, 2018, Plaintiff appeared before the ALJ for a hearing on her claim. (AR at 35.) On July 31, 2018, the ALJ denied Plaintiff's claim. (AR at 141.) The Appeals Council granted Plaintiff's request for review

1    and remanded the case back to the ALJ. (AR at 161.) Upon remand, the ALJ held a second

2    hearing on February 12, 2020, where both Plaintiff and a different vocational expert

3    testified. (AR at 79.) On April 27, 2020, the ALJ issued another denial. (AR at 10.) Plaintiff

4    appealed again; however, the Appeals Council denied the request for review, rendering the

5    ALJ's second decision the final decision of the Commissioner. (AR at 1.) Plaintiff now

6    seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (Doc.

7    1.)

8         The Court has reviewed the medical evidence and will discuss the pertinent

9    evidence in addressing the issues raised by the parties. Upon considering the medical

10   evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following

11   severe impairments: bilateral knee osteoarthritis and coronary artery disease status post

12   coronary angiography. (AR at 16.)

13        Ultimately, the ALJ evaluated the medical evidence and testimony and concluded

14   that Plaintiff was not disabled from the alleged disability onset date through the date last

15   insured. (AR at 24.) The ALJ found that Plaintiff "did not have an impairment or

16   combination of impairments that met or medically equaled the severity of one of the listed

17   impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR at 16.) Next, the ALJ

18   calculated Plaintiff's residual functional capacity ("RFC"):

19
20
21
22
23
> [Plaintiff] had the [RFC] to perform light work as defined in
> 20 CFR 404.1567(b) except the [Plaintiff] can lift and carry
> twenty pounds occasionally, ten pounds frequently, stand and
> walk four hours in an eight hour workday, and sit for six hours
> in an eight hour workday. The [Plaintiff] could occasionally
> climb, kneel, crouch and crawl, and must avoid even moderate
> exposure to hazards.

24   (AR at 18.) Accordingly, the ALJ found that Plaintiff "was capable of performing past

25   relevant work as an office manager and school director." (AR at 22.)

26   **II.   LEGAL STANDARD**

27        In determining whether to reverse an ALJ's decision, the district court reviews only

28   those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

Plaintiff raises three arguments in her challenge of the ALJ's nondisability finding. First, Plaintiff argues that the ALJ erred by finding Plaintiff's mental impairments were

not severe. (Pl. Br. at 15.) Second, Plaintiff argues that the ALJ erroneously rejected the physical assessment by Plaintiff's treating cardiologist, Dr. Patel and her physician's assistant, Nancy Copper. (*Id.* at 19–20.) Third, Plaintiff argues that the ALJ erroneously rejected her symptom testimony without sufficient justification. (*Id.* at 20–21.) For the following reasons, the Court rejects Plaintiff's arguments and finds that the ALJ's determination is supported by substantial evidence.

### A. Mental Impairment

Plaintiff first argues that remand is required because the ALJ erred at step two by finding her mental impairments were "non-severe." (AR at 16–18.) As referenced by the ALJ, Plaintiff claimed she could not work because she suffered from anxiety and depression. (*Id.*) The ALJ found the alleged severity of Plaintiff's impairments "cause[d] no more than 'mild' limitation in any of the functional areas" and thus found them to be non-severe. (AR at 17.)

To establish a medically determinable impairment, a claimant must provide evidence from a medically acceptable source, such as laboratory results or a licensed physician. 20 C.F.R. § 404.1513(a). An impairment or combination of impairments are "not severe" if the medical evidence clearly establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856 at *3 (1985) (Program Policy Statement; Titles II and XVI: Medical Impairments That Are Not Severe); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself.

SSR 85-28, 1985 WL 56856 at *4. Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as (1) walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, coworkers and usual work situations; and (6) dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1522, 416.922.

To determine whether a claimant's alleged mental impairment is severe, the ALJ rates a claimant's degree of functional limitation in four broad functional areas. 20 C.F.R. § 404.1520a(c). The functional areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ rates the level of impairment in each functional area on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If the ALJ finds that the degree of limitation is only mild in each functional area, then he or she will generally find that the claimant's mental impairment is non-severe. 20 C.F.R. § 404.1520a(d)(1).

The ALJ did not err in finding Plaintiff's mental impairments were non-severe. In his analysis, the ALJ properly evaluated Plaintiff's mental limitations in the four functional areas. (AR at 16–17.) The ALJ found the Plaintiff had no limitation in the functional area of understanding, remembering, or applying judgment. (AR at 16.) Likewise, the ALJ found no limitations in the functional areas of interacting with others, or adapting or managing oneself. (AR at 17.) As to the remaining functional area, concentrating, persisting, or maintaining pace, the ALJ determined Plaintiff had a mild limitation. (*Id.*) To make this determination, the ALJ relied on the opinions of Dr. Haggar and Dr. Drake, where they opined that Plaintiff had an absence of, or mild, mental limitations. (AR at 21–22.) The consultative examiners found Plaintiff exhibited minor, if any, problems with attention, no problems with memory and a slight instability in mood. (*Id.*) Given the consistency with the medical record and its noted "persuasive[ness]", the ALJ properly relied on these opinions. (AR at 22.) *See Mitchell v. Colvin*, No. CV-13-02384-PHX-JZB, 2015 WL 1186222, at *12 (D. Ariz. Mar. 16, 2015). Furthermore, the ALJ rejected Nurse Linehan's opinions because of its significant incongruence with Plaintiff's treatments and

daily activities. (AR at 21.) *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the ALJ may reject opinions that are incongruent with claimant's treatments). The ALJ's explanation proffers a specific and legitimate reason for discounting evidence from an acceptable medical source. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 687 (9th Cir. 2009). Accordingly, the Court finds the ALJ properly assessed Plaintiff's mental impairments as non-severe, with a proper reliance on the opinions of Dr. Haggar and Dr. Drake and a proper rejection of Nurse Linehan's conflicting statements.

Plaintiff also contends that the ALJ failed to consider her mental impairments in his RFC analysis. (Pl. Br. 15–16.) The Ninth Circuit has held that an ALJ commits legal error when he assigns mild limitations in the paragraph B analysis yet excludes those limitations from the RFC determination. *Hutton v. Astrue*, 491 Fed. App'x 850, 850–51. The burden of proof lies with the claimant to show that the ALJ erroneously erred in excluding those limitations. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Plaintiff's argument is not persuasive given that the ALJ *did* consider her mental impairments in his RFC analysis. The ALJ referenced Plaintiff's "unstable" and "depressed mood", "adequate attention and comprehension" and "reported irritation." (AR at 20, 22.) Further, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . ." (AR at 18.) The Court construes this statement to include Plaintiff's alleged mental impairments. Accordingly, the Court finds the Plaintiff failed to meet her burden and thus, finds no error.

**B.    Medical Opinion Evidence**

Next, Plaintiff argues that the ALJ improperly rejected the opinions of her treating cardiologist, Dr. Patel, and physician's assistant ("PA"), Nancy Cooper. (Pl. Br. at 19.) In response, the Commissioner argues that the ALJ properly provided legally sufficient reasons, supported by substantial evidence, for discounting Dr. Patel's and PA Cooper's opinions. (Def. Br. at 13–14.)

In assessing a claimant's RFC, the ALJ considers "all of the relevant medical and other evidence," including medical opinion evidence. 20 C.F.R. § 416.945(a)(3); *see* 20

C.F.R. § 416.927.[*] Generally, the greatest weight is given to the medical opinions of a treating physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). A treating physician's opinion is entitled to controlling weight *only* if the opinion is "well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Jimenez v. Comm'r of Soc. Sec. Admin.*, 413 F. Supp. 3d 993, 999 (D. Ariz. 2019); 20 C.F.R. §§ 404.1527(d)(2). Further, "[t]he ALJ need not accept [the] opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.

Dr. Patel and PA Cooper jointly opined that Plaintiff has extreme functional limitations, but this opinion is largely unsupported by the medical evidence as well as their own treatment notes. (AR at 1295–98.) For example, Plaintiff received an X-ray examination of her knee following a motor vehicle accident. (AR at 1439.) This examination produced normal results, and a further physical examination showed Plaintiff maintained normal strength, no swelling or deformity, and intact ligaments. (AR at 21, 1410.) Dr. Patel also found Plaintiff maintained a normal gait and posture, and at a later visit, encouraged her to exercise by walking 30 minutes a day. (AR at 1471, 650.) While Plaintiff argues a recommendation of walking for exercise is not inconsistent with finding one disabled, it *is* inconsistent with the imposition of extreme functional limitations. These exercise recommendations are especially inconsistent with Dr. Patel's opinion that Claimant could only perform "less than sedentary" work. (AR at 21, 1295–98.)

Additionally, the opinion of Dr. Patel and PA Cooper remains incongruent with Plaintiff's daily activities. Plaintiff reported that she independently shops without an assistive device, performs housework, watches her granddaughter, conducts personal care and goes out to dinner with her son. (AR at 20.) Further, in January 2018, Plaintiff reported to Dr. Patel that she was walking four miles a day for exercise, without chest discomfort or shortness of breath. (AR at 1474.) Plaintiff's self-reported activities signal her ability to

---

[*] When considering medical opinions and prior administrative findings for claims filed before March 27, 2017, the rules in 20 C.F.R. §§ 404.1527, 416.927 apply. 20 C.F.R. §§ 404.1520c, 404.1527, 416.920c, 416.927.

interact socially, manage her symptoms and function in public environments. Moreover, the record is inapposite from the authority cited by Plaintiff, *Vertigan v. Halter*, where the claimant suffered from physical—as opposed to mental—impairments. 260 F.3d 1044, 1048–49. While it is true that physical activities bear no weight in determining the severity of a physical impairment, the same cannot be assumed for mental impairments. *See* 20 C.F.R. § 404.1520(c). The ALJ did not err in his interpretation of Plaintiff's mental impairments as non-severe and consequential rejection of the incongruent opinion of Dr. Patel.

### C.   Symptom Testimony

Additionally, Plaintiff argues that the ALJ erred by rejecting her symptom testimony without clear and convincing reasons, given the lack of malingering present. (Pl. Br. at 20–21.) Plaintiff claims that the ALJ erred by discrediting Plaintiff's symptom testimony on an assertion that was not supported by the medical evidence, and on an attenuated reliance of Plaintiff's daily activities. (*Id.* at 21–22.) In response, Defendant argues that the ALJ properly rejected the Plaintiff's symptom testimony, given the objective medical evidence and her daily activities. (Def. Br. at 17.)

An ALJ employs a two-step process in evaluating a claimant's symptom testimony. *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the . . . symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (internal quotation marks omitted)). If the claimant presents this evidence, then the ALJ can accordingly reject the claimant's symptom testimony where there is evidence of malingering, *Lingenfelter*, 504 F.3d at 1036, or by offering "specific, clear and convincing reasons for doing so." *Garrison* 759 F.3d at 1014–15. These reasons must be sufficient to "permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958.

### 1.    Objective Medical Record

The ALJ properly relied on objective medical evidence when rejecting Plaintiff's symptom testimony. (AR at 19–22.) Although the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some [of] the alleged symptoms," the Plaintiff's statements concerning the effects of these symptoms are generally inconsistent with the objective medical record. (AR at 19.) Plaintiff's complaints of knee pain do not correspond with the objective medical record. (AR at 1408.) The record shows that following various injuries to Plaintiff's knee, a 2017 X-ray revealed a normal examination. (AR at 1410.) Plaintiff had maintained normal strength, no swelling or deformity, and all of her ligaments remained intact. (*Id.*) The record also explicitly shows that Plaintiff maintained normal stress tests and echocardiograms in both January 2016 and May 2018. (AR at 1450, 1477, 1486.) This does not align with Plaintiff's claims of chest pain and chest tightness. (AR at 1478.) Given that these normal examination findings are in contradiction with Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms, the ALJ did not err in rejecting Plaintiff's symptom testimony.

### 2.    Plaintiff's Daily Activities

The ALJ also properly relied on Plaintiff's daily activities when discounting Plaintiff's allegations. (AR at 16–17, 19–20.) 20 C.F.R. § 404.1529(c)(3)(i); *Smolen*, 80 F.3d at 1284 (finding that the ALJ may consider the claimant's daily activities when weighing a claimant's symptom testimony). Plaintiff claims her pain and depression inhibit her various routine activities, yet she continues to conduct all routine activities. (AR at 93– 95, 559, 561.) She admits that she shops alone—without assistance—watches her granddaughter, gardens, performs household chores, cares for herself, her two dogs, three cats and three parrots, and goes out to dinner with her son. (AR at 561–62.) These activities do not corroborate Plaintiff's claimed difficulty in carrying out job tasks and daily activities. (AR at 20.) Given these facts, the Court rejects any notion that the ALJ relied on "*post hoc* rationale" (Reply at 9), and consequently affirms that the ALJ did not err in

utilizing Plaintiff's daily activities to support the rejection of her symptom testimony.

**IV.     CONCLUSION**

The ALJ provided sufficient reasons supported by substantial evidence for finding Plaintiff's mental impairments to be non-severe, and for rejecting both the medical opinion evidence and symptom testimony. The Court affirms the ALJ's nondisability determination.

For the forgoing reasons,

**IT IS ORDERED** affirming the July 31, 2018 decision of the Administrative Law Judge (AR at 166–69), as upheld by the Appeals Council on October, 28 2020 (AR at 1–6).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

**Dated this 11th day of July, 2022.**

Michael T. Liburdi
United States District Judge